IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| JOSEPH ABSTON | § |
| | § |
| V. | § CIVIL ACTION NO. G-13-040 |
| | § |
| CROWLEY AMERICAN TRANSPORT LINE, INC., ET AL. | § § § |

## OPINION AND ORDER

Before the Court, with the consent of the Parties, is the Motion for Summary Judgment of Defendants, Jüngerhans Maritime Services GmbH & Co. KG and JMS Schiffahrtsgesselchaft mbH & Co. KG MS "PAVO J"; the Motion seeks the dismissal of all claims asserted against the Defendants by Plaintiff, Joseph Abston. Having carefully considered the Parties' submissions and having heard their arguments during a Hearing on the Motion the Court now issues this Opinion and Order.

On February 18, 2012, Abston, a longshoreman for Ports America, was assisting in the unloading and loading of cargo aboard the M/V PAVO J, a vessel managed and owned by the Defendants. Operations began around 7:00 a.m.. To unload cargo from beneath the deck, the deck hatches needed to be opened and the protective railing (safety expansion) at the edge of the deck, which was in the path of the opened hatches, had to be removed. Unloading was completed around 10:15 a.m.. At some time thereafter during cargo operations the hatches were closed so cargo could be placed on the deck's surface.

When the hatches were closed the ship's crew did not replace the railing.  At about 3:00 p.m. work was suspended during a heavy rainfall which left the deck and the exposed cargo wet and slippery.  Around 4:00 p.m. the last of a series of flat racks was loaded onto the deck and, like the others before it, placed approximately two and one half feet from the deck's edge.  To unhook one of the straps used to load the flat rack, Abston climbed its edge by balancing one foot on what he called a hinge.  Unfortunately, but foreseeably, Abston's foot and hand slipped due to the slippery conditions and he fell to the deck.  According to Abston he fell feet-first, but after unsuccessfully trying to grab hold of a co-worker he spun around and fell over the edge of the deck to the deck below, a distance of about 15 feet.  Abston suffered numerous injuries from the fall, injuries he claims could have been avoided if the railing had been replaced so he could have grabbed it before falling to the lower deck.  Following Abston's fall the final two cargo containers were stacked next to the flat rack and the loading operations were completed.

In their Motion the Defendants argue that the evidence is insufficient to support a verdict against them for the breach of any of the three duties owed by a ship owner under Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156 1981).  Abston counters by arguing that the Defendants breached the active control duty by ordering the flat racks placed so near to the edge of the deck and the duty to intervene by not replacing the railing after the deck hatches had been closed.

This is a non-jury case which, if tried, would be presided over by the undersigned. Significant to this Motion is the fact that Plaintiff's counsel has represented that no fact witnesses, except Abston, will be called at trial; instead, Plaintiff will only present the deposition testimony he has attached to his response to the Defendants' Motion. The Court has read the depositions in their entirety. Under these circumstances, the Fifth Circuit has recognized that a district court has somewhat greater discretion to consider what weight it will accord the summary judgement evidence. In re Placid Oil Co., 932 F.2d 394, 397 (5th Cir. 1991). If a bench trial on the merits will not enhance the court's ability to draw inferences and conclusions then a district court should properly draw inferences unfavorable to the non-movant. Nunez v. Superior Oil Co., 572 F.2d 1119, 1124 (5th Cir. 1978). Therefore, "even at the summary judgment stage a judge in a bench trial has limited discretion to decide that the same evidence presented to him or her as the trier of fact in a plenary trial could not possibly lead to a different result." Placid Oil, 932 at 398.

Abston seems to concede that he cannot show a breach of the turnover duty and this Court agrees. The initial removal of the railing was necessary to open the deck hatches and their absence was, admittedly, an open and obvious condition.

Abston argues that the Defendants' order to place the flat racks so close to the edge of the deck without the railing in place was a breach of the active control duty. This Court, however, finds his argument unpersuasive. As the Defendants point out, the Fifth Circuit has on at least two occasions held that merely determining the placement of cargo

3

or preparing the cargo loading plan will not constitute active control of the cargo operations being performed by the stevedore's longshoremen. <u>Pledger v. Phil Guilbeau Offshore, Inc.</u>, 88 Fed. Appx. 690 (5th Cir. 2004); <u>Sobrino-Barrera v. Anderson Shipping Co., Ltd.</u>, 495 Fed. Appx. 430 (5th Cir. 2012). In fact, Abston's assistant gang foreman, Jeffery Williams, testified that the cargo had to be placed where it was to allow for an orderly unloading of the cargo at the different ports of call during the ship's upcoming voyage.

    Abston also argues that the Defendants had the duty to intervene and replace the railing once the deck hatches were closed and before cargo was loaded on the deck. There is some conflicting evidence on this point. Williams testified that the railing was "supposed to be put back up after the deck is closed" in case someone fell. Ports America was even cited by OSHA because the "Rails for deck 9 were not in place." On the other hand, the crane operator, Carlos Watson, testified that during his 20 years of experience the railing remained down until after the deck was loaded to keep it from being damaged by the swinging heavy cargo containers. If the Court were forced to resolve this evidentiary issue at trial it would accept as true Watson's testimony that it was the customary practice to leave the railing removed. That version simply makes the most sense. Moreover, at the time of Abston's fall the deck loading had almost been completed and there is no evidence that Williams or any other longshoreman requested the railing be replaced or complained of its absence. Nor is there any evidence that the longshoremen

were under any time or supervisory pressure to complete the cargo operations which forced them to expose themselves to the risk caused by the missing railing. Cf. Teply v. Mobil Oil Corp., 859 F.2d 375, 378 (5th Cir. 1988). The Court does not doubt that crew members were present and observing the cargo operations, but the Defendants may rely on the longshoremens' judgment that despite the missing railing it was safe enough to perform their job. Randolph v. Laeiz, 896 F.2d 964, 971 (5th Cir. 1999) ("This Court has noted that in some situations the vessel owner is entitled to rely on the stevedore's judgment that the condition, though dangerous, was safe enough.")

To be sure, there is ample evidence that Abston exercised obviously improvident judgment just prior to his fall. It was obvious to him that the railing was not up. Nonetheless, he tried for the first time in his life to climb up the end of the flat rack, a procedure every fact witness testified was dangerous and improper, even forbidden according to Williams. He did so with the admitted knowledge that the conditions were wet, slippery and unsafe following the rain. He did not use or request a fall protection harness. And he did not use the ladder that was available and, as Williams testified, could and should have been used as a safer alternative.

But there is no evidence that the Defendants had actual knowledge that the "customary" absence of the railing constituted an unreasonably dangerous condition for longshoremen; indeed, the cargo operations had safely been all but completed by the time Abston fell. Nor is there evidence that it would have been obvious that the "customarily"

missing railing was a condition that was so hazardous that anyone, including the Defendants, could tell that continuing to work in its absence created an unreasonable risk that an expert longshoreman[1] would, late in the cargo operations, attempt to climb up the end of the flat rack, slip and fall over the edge of the deck down to the deck below. See Greenwood v. Societe Francaise De, 111 F.3d 1239, 1249 (5th Cir. 1997).

This Court finds that the evidence is insufficient to establish the Defendants breached any duty owed to Abston.

It is, therefore, **ORDERED** that the Defendants' Motion for Summary Judgment (Instrument no. 54) is **GRANTED** and the Complaint of Plaintiff, Joseph Abston, is **DISMISSED**.

**DONE** at Galveston, Texas, this      10th       day of September, 2015.

_____
John R. Froeschner
United States Magistrate Judge

---

[1] Abston testified at some length about his lack of experience and competence as a longshoreman, but his counsel conceded at the Hearing that for purposes of summary judgment the Court must consider Abston to be an "expert and experienced" longshoreman acting with "reasonable care" as required by Scindia. 451 U.S. at 168